UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER, INC.; SHAWN BATES and HOYT BAUGH<br>Plaintiffs<br>v.<br><br>THE DORIAN APARTMENTS, LLC (d/b/a "DORAIN APARTMENTS"); JOHN CENTANNI; JONI CENTANNI GRAVOLET; KATHERINE DAIGLE, and XYZ INSURANCE COMPANY,<br>Defendants. | No. 2:15-cv-6406.<br>Section R, Division 1<br>Judge Sarah Vance, Presiding<br>Magistrate Judge Sally Shushan |

## FIRST AMENDED COMPLAINT

COME NOW, through undersigned counsel, Shawn Bates, Hoyt Baugh and the Greater New Orleans Fair Housing Action Center (GNOFHAC) (collectively, "plaintiffs"), who respectfully represent:

### INTRODUCTION

1. This lawsuit seeks redress for racial discrimination in housing. Defendants have repeatedly steered African American renters away from the Dorain Apartments and incentivized white people to rent in the same complex. Plaintiff Hoyt Baugh witnessed at least one instance of racial steering, plaintiff Shawn Bates experienced another, and GNOFHAC's testers uncovered several more. Plaintiffs come to this court seeking damages and injunctive relief to remedy past violations and enjoin defendants from engaging in discriminatory practices.

1

**JURISDICTION**

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, because this action involves a federal question, 28 U.S.C. § 1343, because this action involves civil rights issues, and 42 U.S.C. § 3613(a)(1)(A), because this action involves a discriminatory housing practice.

**VENUE**

3. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana.

**PARTIES**

4. Plaintiff HOYT BAUGH is an investigator with the Equal Employment Opportunity Commission (EEOC), who moved to New Orleans after Hurricane Katrina to support the City's recovery. The Fair Housing Act allows Mr. Baugh, as a white person, to complain that defendants' racial discrimination in rental housing has denied him the opportunity to enjoy the social benefits of living in a racially integrated community. *See Trafficante v. Metropolitan Life Company*, 409 U.S. 205, 208, 211-212 (1972); *Broadmoor Improvement Ass'n, Inc. v. Stan Weber & Assocs.*, 597 F.2d 568 (5th Cir. 1979) (per curiam); *Galveston Open Government Project v. US Dept. of Housing & Urban Dev.*, 17 F.Supp.3d 599, 608-611 (S.D. Tex. 2014), *aff'd.*, No. 14-40955 (5th Cir. July 23, 205); *see also Lincoln v. Case*, 340 F.3d 283, 288-289 (5th Cir 2003); 42 U.S.C. § 3602(i)(1) (Fair Housing Act definition of "aggrieved person"). Mr. Baugh has been, and continues to be, adversely affected by the acts, policies, and practices of the defendants and/or their agents.

2

5. Plaintiff SHAWN BATES is an African American man who sought to rent property owned and managed by defendants.  Mr. Bates has been, and continues to be, adversely affected by the acts, policies, and practices of the defendants and/or their agents.  He is an aggrieved person according to the Fair Housing Act.  42 U.S.C. § 3602(i)(1).

6. Plaintiff GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER ("GNOFHAC") is a non-profit civil rights organization with its principal place of business located at 404 South Jefferson Davis Parkway in New Orleans, Louisiana.  GNOFHAC's mission is to eradicate housing discrimination and segregation throughout the Greater New Orleans area by promoting the equal availability of housing opportunities to all persons without regard to any federally or locally protected classification, including race, religion, gender, national origin, familial status or disability.  In furtherance of its mission, GNOFHAC has for more than twenty years sought to promote equal housing opportunities in all housing transactions, including rentals.

7. Defendant THE DORIAN APARTMENTS, LLC, doing business as "The Dorain Apartments," is a limited liability property management company incorporated in Louisiana and registered with the Louisiana Secretary of State.  The Dorian Apartments LLC owns residential rental properties and/or provides property management services.  Upon information and belief, at all times relevant to this lawsuit, defendant The Dorian Apartments LLC managed the "Dorain Apartments," a 20-unit rental apartment complex located at 650 Manhattan Boulevard, Harvey, LA, including the establishment and implementation of rental policies, rules and practices.

8. Upon information and belief, defendant JOHN CENTANNI is a United States

citizen of full age and majority.  At all times relevant to this lawsuit, Mr. Centanni owned the Dorain Apartments rental complex located at 650 Manhattan Boulevard in Harvey, La.  On information and belief, Mr. Centanni employed defendants The Dorian Apartments LLC and Katherine Daigle to provide comprehensive property management services for the property, including the establishment and implementation of rental policies, rules and practices.  Defendant Centanni is a resident of the Eastern District of Louisiana.

9. Upon information and belief, defendant JONI CENTANNI GRAVOLET is a United States citizen of full age and majority.  She is the registered agent and officer of The Dorian Apartments LLC.

10. Upon information and belief, defendant KATHERINE DAIGLE is a United States citizen of full age and majority.  At all times relevant to this lawsuit, on information and belief, she was employed by Defendants Centanni, Gravolet, and The Dorian Apartments, LLC as the resident manager and leasing agent of Dorain Apartments and acted in a managerial capacity.  She is a resident of the Eastern District of Louisiana.

11. XYZ Insurance Company is an insurance company with a policy wherein defendants are listed as the insured.  Defendant XYZ insures the other defendants for negligence and/or violations of the Fair Housing Act; the negligence and Fair Housing Act violations alleged herein are covered by the policy.  By virtue of the Louisiana Direct Action Statute, plaintiffs, as injured persons, have a right of direct action against the insurer for the terms and limits of the policy.  La. R.S. 22:1269.   The essence of the direct action statute is that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.

**STATEMENT OF FACTS**

<u>The Property and Its Surrounding Neighborhood</u>

12.   The Dorain Apartments, located at 650 Manhattan Blvd. in Harvey, La. ("the Property"), consists of approximately twenty units.  The Property is a dwelling subject to the Fair Housing Act, 42 U.S.C. § 3602(b) and subject to no exception under 42 U.S.C. § 3603(b).  Each individual apartment unit within the Property is also a dwelling subject to the Fair Housing Act, 42 U.S.C. § 3602(b) and subject to no exception under 42 U.S.C. § 3603(b).

13.   The Property is located on the West Bank on Manhattan Boulevard in Harvey, Louisiana, between the Westbank Expressway and the Mississippi River.  Plaintiff Hoyt Baugh resided at the Property in 2014.  During Mr. Baugh's time as a tenant, no African Americans lived at the complex.  By contrast, the ten-block radius surrounding the complex is predominately African American and located in a zip code where 62% of renters are African American.

<u>Hoyt Baugh Witnesses Defendants' Discriminatory Actions</u>

14.   In March 2014, Plaintiff Hoyt Baugh observed a "For Rent" sign posted on the exterior of the Dorain Apartments located at 650 Manhattan Blvd. in Harvey, La. ("the Property").  The sign directed prospective tenants to Apartment D, where on-site manager and defendant Katherine Daigle resided.

15.   Defendant Ms. Daigle showed Mr. Baugh two units: a one-bedroom unit on the first floor and a two-bedroom unit on the second floor.  Both units were vacant and available immediately.

16.   Mr. Baugh decided to rent the one-bedroom apartment and tendered the first

month's rent and a security deposit.

17. Mr. Baugh began moving his belongings into the apartment later that week. During his move, he witnessed an African American teenager approach Ms. Daigle to inquire about availability. According to Mr. Baugh, the teenager stated, "'Mom wants to know if you have any apartments,'" to which Ms. Daigle replied, "'No, I don't have any apartments.'" Mr. Baugh believed this to be untrue, as Ms. Daigle had told him the upstairs two-bedroom unit was vacant.

18. Mr. Baugh moved out of the apartment in the fall of 2014. During the period he was residing at the Property, no African Americans lived at the complex.

19. As a result of defendants' actions, Hoyt Baugh was denied the benefits of living in a racially integrated community, and suffered damages, emotional and otherwise, that continue to this day.

## Shawn Bates Experiences Defendants' Discriminatory Actions

20. When Mr. Baugh moved out of the apartment, in the fall of 2014, Shawn Bates experienced discrimination at the hands of defendants. Mr. Bates went to the Property to help Mr. Baugh move out of his apartment. Mr. Baugh introduced Mr. Bates to Ms. Daigle as his friend. Mr. Baugh told Ms. Daigle that Mr. Bates was interested in renting an apartment at the Property. Ms. Daigle did not accept Mr. Bates' offer to shake hands. Ms. Daigle told Mr. Bates she did not have any properties to rent at the time. Mr. Bates inquired about a waiting list and Ms. Daigle responded they did not have one.

21. As a result of defendant's actions, Mr. Bates suffered insult and humiliation consistent with being a victim of racial discrimination in the year 2015, fifty-one years after passage of the 1964 Civil Rights Act (Pub.L. 88–352, 78 Stat. 241).

### Investigation by Greater New Orleans Fair Housing Action Center

22. Offended by Ms. Daigle's actions, Mr. Baugh reported what he had witnessed at the Dorain Apartments to GNOFHAC. GNOFHAC diverted its resources to conduct a testing investigation to assess whether defendants were engaging in discriminatory conduct. GNOFHAC conducted its testing investigation of the Property during November and December of 2014.

23. GNOFHAC's testers were trained, ready, willing, and able to rent within the terms and the conditions of defendants' rental policy.

24. On November 6, 2014, an African American male tester ("Raymond") visited the complex and spoke to defendant Ms. Daigle.  Raymond inquired about the "For Rent" sign, which was visibly posted at the property, and whether any units were available.  Ms. Daigle told Raymond there were no vacancies and that she was unaware of any upcoming availability or vacancies.  Ms. Daigle also told him that they "keep that sign out all the time" in reference to the "For Rent" sign.

25. On November 8, 2014, a white male tester ("Bryant") visited the complex and inquired about vacancies with Ms. Daigle, who told him there were no vacancies at that time but suggested that he check back closer to Thanksgiving.  Ms. Daigle requested the tester's full name and job and said she would write his name down.

26. Bryant returned on November 22, 2014, and spoke with a family member of Ms. Daigle who took his name and number and said Ms. Daigle would call him back.  Ms. Daigle called Bryant the same day and told him there was a one-bedroom unit available.  They made an appointment for him to view the unit on December 3, 2014.

27. On December 2, 2014, an African American female tester ("Nika"), following the

instructions on the "for rent" sign, knocked on Ms. Daigle's door at Dorain Apartments and inquired whether there were any available apartments. Ms. Daigle responded that there was nothing available and suggested that she inquire at another apartment building nearby.

28. On December 3, 2014, the white male tester ("Bryant") showed up for the scheduled appointment, and Ms. Daigle showed him a one-bedroom apartment and said it was available. Ms. Daigle told him that he could move in as soon as he paid the deposit and first month's rent. The tester did not confirm that he wanted the apartment, and he did not tender any payment.

29. On December 4, 2014, an African American male tester ("Jahmal") knocked on Ms. Daigle's door to inquire about availability. Ms. Daigle told Jahmal there was no availability and suggested he stop by later in the month in case anyone turned in a notice. She reiterated that nothing was available at that time.

## Additional Facts

30. GNOFHAC represents the interests of the Greater New Orleans community in combating housing discrimination. Defendants' unlawful discriminatory acts have frustrated GNOFHAC's mission and efforts to eliminate discrimination in the Greater New Orleans area and to promote equal housing opportunity.

31. GNOFHAC expended significant time and resources to identify and monitor defendants' discriminatory acts through testing and investigation after receiving Mr. Baugh's complaint, testing and investigation that would not have occurred but for the defendants' discrimination witnessed by Mr. Baugh.

32. GNOFHAC has also expended significant time and resources to counteract the

effects of defendants' discrimination through education and outreach efforts. These efforts included, but were not limited to, an education effort directed to educating community members about how a non-racial minority is harmed by discrimination as well as recognizing when such person is a "beneficiary" of racial discrimination. GNOFHAC also designed and mailed literature about housing discrimination, including specific information about racial discrimination and what a person should do when they recognize it even she is not the direct victim of the discrimination. Finally, GNOFHAC designed and published a social media advertisement that encouraged people to take action when they witness discrimination directed at others.

33. The efforts to identify and monitor defendants' unlawful conduct inflicted a significant diversion and drain on GNOFHAC's resources that perceptibly impaired GNOFHAC's ability to engage in other activities related to fair housing, thereby frustrating its mission. Because defendants remain in a position to discriminate, such monitoring efforts will be required going forward, which will result in further frustration of mission.

34. The efforts to counteract the effects of defendants' discrimination through targeted education and outreach efforts additionally and independently diverted and drained GNOFHAC's resources such as to perceptibly impair GNOFHAC's ability to engage in other activities related to fair housing, thereby frustrating its mission. Specifically, GNOFAHC was forced to divert time related to planning *Fair Housing Five* and *Housing Choice Game* activities for local elementary and middle schools, beginning quarterly landlord trainings and preparations for its annual Fit for a King fair housing conference.

35. There was an agency relationship between Katherine Daigle and John Centanni and

The Dorain Apartments. In carrying out the aforementioned actions, defendant Katherine Daigle acted with the authority granted to her by defendants John Centanni, The Dorian Apartments, LLC and Joni Centanni Gravolet. As such, John Centanni, The Dorian Apartments LLC, and Joni Centanni Gravolet are liable for the discriminatory acts of Ms. Daigle, their agent.

36. In carrying out the aforementioned actions, the defendants acted with reckless or callous disregard of plaintiffs' federally protected rights.

## VI.  CAUSES OF ACTIONS

37. Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs 1-36 above.

### First Cause of Action
### Fair Housing Act, 42 U.S.C. § 3604(a)
### (All Defendants)

38. Defendants refused to rent, or negotiate for the rental of, or otherwise made unavailable or denied, a dwelling on the basis of race, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).

### Second Cause of Action
### Fair Housing Act, 42 U.S.C. § 3604(d)
### (All Defendants)

39. Defendants made representations on the basis of race that a dwelling was not available for rental when such dwelling was in fact so available, in violation of the Fair Housing Act, 42 U.S.C. § 3604(d).

### Third Cause of Action
### Negligence Under Louisiana Law
### (Defendants The Dorian Apartments, LLC , Joni Centanni Gravolet, and John Centanni)

40. As employers of defendant Katherine Daigle, defendants The Dorian Apartments, LLC, Joni Centanni Gravolet, and John Centanni had a duty of reasonable supervision of Katherine Daigle to ensure that she was performing her job as property manager and leasing agent in conformance with the law.

41. Defendants The Dorian Apartments LLC, John Centanni, and Joni Centanni Gravolet did not perform such duty – in the way of training, promulgating standards for her conduct and monitoring her rental decisions – and the failure to perform the duty caused the harm complained of herein.

42. Defendants The Dorian Apartments, LLC, John Centanni, and Joni Centanni Gravolet were negligent in their supervision and retention of Katherine Daigle.  Plaintiffs suffered damages as a direct result of defendants' negligence.

**Fourth Cause of Action**
**Louisiana Direct Action Statute**
**La. R.S. 22:1269**
**(Defendant XYZ Insurance Company)**

43. Plaintiffs, as injured persons, have a right of direct action against the insurer for the terms and limits of the policy.

44. Defendant XYZ insurance company insures the other defendants for violations of the Fair Housing Act and/or negligence.  Plaintiffs have alleged herein that they are harmed by Defendants' violations of the Fair Housing Act and negligence.  By virtue of La. R.S. 22:1269, Defendant XYZ insurance company is liable to the limits of its policy with the other defendants.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray that the Court grant the following relief:

11

(1)     Enter a declaratory judgment finding that the foregoing actions of defendants violate the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

(2)     Enter a permanent injunction prohibiting defendants, their agents, employees, successors, and all other persons in the active concert or participation with them from discriminating against any person on the basis of race;

(3)     Require appropriate changes in policy and independent monitoring in order to ensure compliance with the mandates of the federal Fair Housing Act;

(4)     Award compensatory damages in amounts to be determined by a trier of fact, plus interest from the date of judgment on the Fair Housing claims that would fully compensate plaintiffs for the injuries that have been caused by the conduct of the defendants alleged herein;

(4)     Award punitive damages to plaintiffs that will punish defendants for the willful, wanton and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

(5)     Award plaintiffs reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 3613(c)(2); and

(6)     Order such other and further relief as this Court deems just and proper.

Dated: December 4, 2015.

        Respectfully submitted,


        */s/ John Adcock*
        JOHN ADCOCK
        Louisiana Bar No. 30372
        GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER
        404 S. Jefferson Davis Pkwy
        New Orleans, LA 70119
        Email:  jadcock@gnofairhousing.org
        T:  (504) 717-4050


        */s/ Alexander "Sascha" Bollag*
        ALEXANDER "SASCHA" BOLLAG
        La. Bar No. 34447
        GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER
        404 S. Jefferson Davis Pkwy
        New Orleans, LA 70119
        Email: sbollag@gnofairhousing.org
        T:  (504) 717-4050

        *Attorneys for Plaintiffs*