UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREATER NEW ORLEANS FAIR HOUSING          *   CIVIL ACTION NO. 15-6406
ACTION CENTER, INC., ET AL.

                                          *   SECTION: "R"(1)
VERSUS

                                          *   JUDGE SARAH S. VANCE
DORIAN APARTMENTS, LLC ET AL.

                                          *   MAGISTRATE JUDGE
                                              JANIS VAN MEERVELD

*****************************************  *

<u>ORDER AND REASONS</u>

The following motions are before the court:

1.  Motion to Compel Initial Disclosures and Responses to Interrogatories and Requests for

    Production filed by defendant The Dorian Apartments, LLC (Rec. Doc. 26);

2.  First Motion to Compel filed by plaintiffs (Rec. Doc. 29); and

3.  Second Motion to Compel filed by plaintiffs (Rec. Doc. 30).

The Court held oral argument on October 19, 2016, and ordered that Plaintiffs' First Motion to

Compel (Rec. Doc. 29) and Second Motion to Compel (Rec. Doc. 30) were granted, and

Defendant's Motion to Compel (Rec. Doc. 26) was granted in part. The Court herein provides its

reasons.

<u>Background</u>

This lawsuit arises out of alleged racial discrimination by The Dorian Apartments, LLC

("Dorian"), at a 20-unit rental apartment complex in Harvey, Louisiana known as "Dorian

Apartments" (the "Property") that is owned and managed by Dorian. First Amend. Complaint,

ECF No. 3, at 1-3. Plaintiff Hoyt Baugh claims that he moved into the Property in March 2014,

and soon after he observed defendant Katherine Daigle, the on-site manager, tell an African

American teenager that no apartments were available, though Mr. Baugh believed this to be untrue. Id. at 5-6. Mr. Baugh, who is white, asserts that he lived at the Property until the fall of 2014 and during that time, no African Americans lived at the complex. Id. at 6. He claims he has suffered damages because he was denied the benefit of living in a racially integrated community. Id. Shawn Bates asserts that he experienced racial discrimination when he helped Mr. Baugh move out of his apartment in the fall of 2014. Id. Mr. Bates claims that Ms. Daigle declined to shake his hand and told him that she did not have any properties to rent and that she did not have a waiting list. Id.

Mr. Bates and Mr. Baugh reported their experiences to the Greater New Orleans Fair Housing Action Center, Inc. ("GNOFHAC") and GNOFHAC began an investigation. Id. at 7. Over the course of about a month, they sent several "testers" to the Property. Id. They claim that while both the African American and white testers were told there were no vacancies, Ms. Daigle took down the name of the white tester and suggested he check back a few weeks later. Id. Plaintiffs assert that when the white tester checked back, his call was returned and he was told there was a unit available. Id. He made an appointment to view the apartment on December 3, 2014. Id. at 8. Plaintiffs allege that the African American tester inquired about an apartment on December 2, 2014, and was told there was nothing available. Id. When the white tester came to the Property on December 3, 2014, Plaintiffs claim he was shown an apartment and was told it was available. Id. The tester did not confirm whether he wanted the apartment and, according to the Plaintiffs, the following day an African American tester was told there was no availability at the Property. Id.

The Plaintiffs assert claims for violation of the Fair Housing Act as well as a claim for negligence.

<u>Law and Analysis</u>

1.   *Preliminary Issue: Meet and Confer Requirement*

The Plaintiffs first argue that the following portions of Defendants' motion should be denied because Defendants did not satisfy the requirement that they first meet and confer:

a.   **Calculation of damages.** Plaintiffs submit that Defendants never raised an issue with the Plaintiffs' calculation of damages in their telephone conference or the follow up letters exchanged by the parties. Pls.' Memo. in Opp., ECF No. 28, at 7.

b.   **Mr. Baugh's prior residences**. Plaintiffs say that they provided supplemental responses regarding damages computations and that Defendants should have met and conferred about those supplemental responses before filing the motion to compel. <u>Id.</u> at 11-12. It is unclear how this supplementation regarding damages relates to Mr. Baugh's prior residences.

c.   **Documents in privilege log.** Plaintiffs contend that they supplemented their privilege log following the parties' discovery conference, but that Defendant did not attempt to meet and confer again about the supplemental responses before filing the motion to compel. Pls.' Memo. in Opp., ECF No. 28, at 19-20.

Plaintiffs maintain that Defendants' mere certification, <u>see</u> Rule 37(a)(1) Certificate, ECF No. 26-4, is insufficient to meet the requirements of Rule 37(a)(1). They insist that more specificity is required to show good faith. Plaintiffs cite <u>Hall v. Habul</u> where the Middle District of Louisiana rejected a certification that did not identify the date and means of the purported discovery conference. No. CIV.A. 13-406-SDD, 2015 WL 4094216, at *3–4 (M.D. La. July 7, 2015). But in <u>Hall</u>, the purported discovery conference had occurred before the discovery was due and the court agreed with the defendants that this could not have been the discovery conference. <u>Id.</u> Plaintiffs

also cite <u>Compass Bank v. Shamgochian</u>, where the Southern District of Texas required that the certification include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions." 287 F.R.D. 397, 398 (S.D. Tex. 2012). As that court conveyed, however, the purpose is to provide enough information to allow the Court to determine the sincerity of the parties' attempts to confer in good faith. <u>See</u> <u>id.</u>

Here, it appears from the correspondence that Defendants did not raise the issue of calculation damages with the Plaintiffs in their discovery conference. Defendants' certification suggests all issues were discussed. Because of the limited nature of the Court's ruling on the issue (discussed below) and in light of the fact that a discovery telephone conference was conducted, the Court finds it more efficient to rule on the substance of the issue.

With regards to the two issues where the Defendants considered Plaintiffs' post-discovery conference supplementation insufficient and did not attempt to confer again to resolve the issues, the Court is still convinced that the parties engaged in good faith attempts to resolve their issues before Defendants filed their motion to compel. The parties had a telephone discovery conference, they exchanged follow up correspondence with their positions and Plaintiffs supplemented some responses. The duty to confer ends at some point when it appears that the parties will not be able to resolve their differences. This analysis will vary case by case, but here, the Court finds the parties met their burden of conferring in good faith before coming to the Court.

2. *Motions to Compel: Standard of Review*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

This Court construes relevance broadly, but it remains anchored by the parties' pleadings. See Fed. R. Civ. Proc. 26 advisory committee's notes to 2000 amendment (explaining that in analyzing relevance, the parties should "focus on the actual claims and defenses involved in the action," but that "a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action"); see also XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)) (concluding that following the 2015 amendments to the Rules, "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'"). Thus, "[t]o implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." Thibault v. BellSouth Telecommunications, Inc., No. CIV.A. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008) (M.J. Wilkinson).

In addition to being relevant, discovery must be proportional. In determining proportionality, the parties (and the Court if called to weigh in) should consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(1).  As the comments to the 2015 amendments explain, the court must "consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id. advisory committee's 2015 Amendment notes.

    *3.  Analysis*

    **A.  <u>Defendants' Motion to Compel Calculation of Damages</u>**

Defendants complain that Plaintiffs' Initial Disclosures contained no computation of damages as required by Rule 26(a)(1)(iii). Defs.' Memo. in Support, ECF No. 26-1, at 2-3. Instead, Plaintiffs provided the following list of damages they seek:

> **Damages.** Fed. R. Civ. P. 26(a)(1)(A)(iii). At this point, it is premature for Plaintiffs to proffer a dollar amount as to the damages they have incurred. The following is a list of the damages Plaintiffs seek in this action:
>> 1) Appropriate compensatory damages that will fully compensate Shawn Bates and Hoyt Baugh for the economic and dignitary injuries (including embarrassment, humiliation, and emotional distress) caused by the Defendants' unlawful discriminatory practices;
>> 2) Appropriate compensatory damages that will fully compensate GNOFHAC for the diversion of resources and frustration of mission related to and caused by Defendants' unlawful discriminatory practices;
>> 3) Appropriate punitive damages that will punish Defendants for their willful, wanton, and reckless discriminatory practices, and will effectively deter similar conduct in the future;
>> 4) Injunctive relief to enjoin Defendants from further discriminatory practices;
>> 5) Attorneys' fees and costs;
>> 6) Any other relief that the Court deems proper

Defendants then served Interrogatories requesting identification of all compensatory and punitive damages sought. Id. at 3. Mr. Bates and Mr. Baugh responded with a reference to the Initial Disclosures. Id. GNOFHAC objected on the grounds of prematurity, and then stated:

> GNOFHAC has expended at least $8,979.55 on efforts to identify, monitor and redress the discriminatory practices of defendants. In addition, GNOFHAC has also incurred expenses in frustration of its mission, including future expenses to continue to monitor defendants to ensure they do not engage in further discrimination and further efforts to redress defendants' discrimination, which have not yet been quantified.

GNOFHAC also seeks punitive damages for defendants' discriminatory behavior, in an amount to be determined at a later date. GNOFHAC reserves the right to supplement this answer with additional damages.

Defendants maintain simply that these responses do not amount to a computation of damages and fail to meet the requirements of Rule 26. Id. at 4.

Plaintiffs respond that they have provided "all available information about their damages." Pls.' Memo. in Opp., ECF No. 28, at 5. At oral argument they described to the Court the documents they had produced regarding the alleged diversion of resources, though Defendants insist it remains unclear what programs the alleged expenditures were diverted from. Plaintiffs submit that the only category of damages for which they have not provided a computation are damages for "embarrassment, humiliation, emotional distress and loss of rights." Id. They point out that these damages will be determined by the fact finder's assessment of the Plaintiffs' suffering. For example, they cite Williams v. Trader Public Co., where the Fifth Circuit explained in dicta that "[s]ince compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)." 218 F.3d 481, 486 (5th Cir. 2000). They also cite a case from the Eastern District of Texas where the court agreed that the plaintiffs need not disclose a computation of damages for mental anguish under Rule 26(a)(1)(C) because damages for mental anguish and emotional harm would be determined by the trier of fact. Burrell v. Crown Cent. Petroleum, Inc., 177 F.R.D. 376, 386 (E.D. Tex. 1997).  Similarly, Plaintiffs here argue that punitive damages cannot be calculated and disclosed because an award will be within the fact finder's discretion. Plaintiffs add that the aforementioned damages can vary widely in amount, making calculation of such damages difficult.

The Court finds that the Plaintiffs are not obligated to quantify or calculate their claims for punitive damages or damages arising out embarrassment, humiliation, emotional distress and loss of rights. However, GNOFHAC must quantify its claim for "expenses in frustration of its mission, including future expenses to continue to monitor defendants to ensure they do not engage in further discrimination and further efforts to redress defendants' discrimination." It is time for GNOFHAC to calculate these damages and disclose them to the Defendants as requested. GNOFHAC has not argued that calculating damages would be overly burdensome and the information is clearly important to the case and Defendants' defenses. Accordingly, and as ordered at oral argument, GNOFHAC shall supplement its response to reflect allocation of resources and how the expenditures were diverted from another effort to the present matter.

**B.  Defendants' Motion to Compel Previous Lawsuits by Bates and Baugh**

Defendants requested that Plaintiffs identify all lawsuits "commenced after January 1, 2001" in which Baugh or Bates was a party. Defs.' Memo in Support, ECF No. 26-1, at 5. Plaintiffs objected that the request did not seek relevant evidence. Id. Defendants submit that the information is "clearly discoverable" and point to a case where the district court affirmed the magistrate judge's order requiring disclosure of all homeowners' lawsuits made as a result of Hurricane Katrina in St. Bernard Parish against the defendant insurer where it was alleged the defendant was in bad faith. Dudenhefer v. State Farm Fire & Cas. Co., No. CIV.A. 06-4380, 2007 WL 1521018, at *3 (E.D. La. May 23, 2007).

Plaintiffs respond that the request for all lawsuits for a fifteen year period calls for irrelevant information and is vague, overbroad and burdensome. Pls.' Memo in Opp., ECF No. 28, at 7. They point out that courts routinely circumscribe or deny such requests. For example, in Entergy Louisiana, Inc. v National Union Fire Insurance Co., the magistrate judge narrowed a

request for lawsuits to require production of all lawsuits over a ten year period concerning the contract at issue in the case. No. CIV. A. 98-219, 1999 WL 239511, at *2 (E.D. La. Apr. 21, 1999). In <u>North American Specialty Insurance Co. v. Iberville Coatings, Inc.</u>, the Middle District of Louisiana held that defendants need not respond to a request for all lawsuits over a ten year period by the defendant's insureds because the request was irrelevant to the question of coverage in the case before the court and was overly broad because it would encompass lawsuits based on non-coverage issues and under completely different policies. No. CIV.A.99-859-A-M2, 2002 WL 34423316, at *5 (M.D. La. Mar. 22, 2002).

Plaintiffs note that despite their position that the request is overbroad, they informed Defendants by letter following a discovery conference that neither Bates nor Baugh have been involved in any prior housing discrimination lawsuits. <u>Id.</u> at 8.  They add that to the extent other lawsuits could be relevant, a fifteen year period is overbroad and burdensome. <u>Id.</u> at 9. They submit that a period of three to five years would be more appropriate. <u>Id.</u>; <u>see</u> <u>Minnis v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.</u>, No. CIV.A. 13-5-BAJ-RLB, 2013 WL 6271940, at *8 (M.D. La. Dec. 4, 2013) (citing cases and concluding that "courts have generally limited discovery of other employees' claims of discrimination to 3 to 5 years").

Defendants have failed to present any reason why <u>all</u> other lawsuits by the Plaintiffs are relevant to their claims. The Court finds that prior discrimination lawsuits (even non-housing discrimination lawsuits) could be relevant as to plaintiffs Bates and Baugh because this could reveal a pattern of filing such lawsuits. Such pattern could emerge over a longer period, and accordingly, the Court finds the fifteen year time period requested by Defendants appropriate. The Court adds that at oral argument, the Plaintiffs indicated that production of prior discrimination lawsuits in which Bates or Baugh were a party would not be overly burdensome. Accordingly, and

as ordered at oral argument, Plaintiffs shall provide a list of all previous discrimination lawsuits in which Mr. Bates or Mr. Baugh was a party over the past fifteen years.

### C. __Defendants' Motion to Compel Previous Depositions by Plaintiffs__

Defendants requested all depositions given by the Plaintiffs over the last fifteen years. Defs.' Memo. in Support, ECF No. 26-1, at 6. They submit that the requested depositions are relevant and may be used for impeachment purposes. Id. at 7.

In response, Plaintiffs argue that as with the request for "all" lawsuits, the request for "all" depositions is overbroad and should be narrowed to seek relevant information. Pls.' Memo. in Opp., ECF No. 28, at 10. They submit that documents from prior lawsuits could only be relevant if the lawsuits were similar. See Wollam v. Wright Med. Grp., Inc., No. 10-CV-03104-DME-BNB, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011) ("To justify cloned discovery in identified cases, however, would require a showing of at least the following: (1) that the allegedly failing devices were substantially similar to the device at issue here; (2) a similarity in the nature of the claims, including similarities in the alleged causes and nature of the failures; and (3) the involvement of the same defendants as are sued here."). Again, the Plaintiffs insist that even if a more limited request for depositions could be crafted, a fifteen year period is too long.

As with the request for all lawsuits, the Court agrees the request for all depositions is overbroad. Again, the Defendants have failed to articulate a particular reason why "all" depositions would be relevant. The request for depositions by the Plaintiffs in non-discrimination lawsuits or lawsuits where the Plaintiffs were not party (e.g., where Mr. Baugh was serving in his professional capacity as an Equal Employment Opportunity Commission investigator) is a fishing expedition. Nonetheless, a more limited production of depositions in line with this Court's order on relevant lawsuits is within the scope of discovery. Accordingly, and as ordered at oral argument, Plaintiffs

shall provide any depositions by Mr. Bates or Mr. Baugh in any discrimination lawsuit in which Mr. Bates or Mr. Baugh was a party over the past fifteen years. With regards to GNOFHAC, at oral argument counsel stated that the Plaintiffs have identified one previous corporate deposition of GNOFHAC, and this was in a disability related housing discrimination lawsuit. The Court finds this deposition is not relevant and will not order its production.

   D.   **Defendants' Motion to Compel Baugh's Past Residences and "racially integrated" status of same.**

   Defendants asked Plaintiffs to identify Mr. Baugh's "residences for the last 15 years" and whether each such residence was in a racially integrated community. Defs' Memo. in Support, ECF No. 26-1, at 7. Mr. Baugh objected to the request as overbroad and seeking irrelevant information, but nonetheless provided a street or neighborhood level description of his residences over the last five years. He also responded that each such residence was in a racially integrated community, except for when he lived at the Dorian Apartments. Id. at 7-8. Defendants submit that the responses, which do not provide specific street addresses, are not sufficiently specific to allow them to determine the buildings and tenants of the properties where Mr. Baugh lived. Id. at 8.

   Plaintiffs submit that whether or not Mr. Baugh ever lived in a racially integrated community does not affect the Defendants' liability here. Pls.' Memo. in Opp., ECF No. 28, at 11. They add that they did identify Mr. Baugh's residences for the last five years and they underscore that when they did so in their supplemental response, the Defendants did not attempt to meet with Plaintiffs to address Defendants' new concern with the lack of detail in the address.

   While the request for previous residences is not relevant to liability, the Court finds the request is relevant to Mr. Baugh's claim for damages because he alleges he was injured by being denied the right to live in a racially integrated community. The Court finds that the fifteen year period is not overbroad because of the clear relevance of the past residences to Mr. Baugh's

damages claim. Further, the Court finds that Defendants are entitled to discovery Mr. Baugh's specific addresses for purposes of determining the racial integration of the building or immediately surrounding neighborhood. At oral argument, Defendants conceded that Plaintiffs had already responded that all Mr. Baugh's previous residences had been in racially integrated communities. Accordingly, and as ordered at oral argument, Plaintiffs shall provide Mr. Baugh's specific street addresses over the past fifteen years.

    **E.**   **Defendants' Motion to Compel GNOFHAC Meeting Minutes**

      Defendants requested a copy of all minutes of all meetings of GNOFHAC from January 1, 2014 through the present. Defs' Memo. in Support, ECF No. 26-1, at 8-9. Plaintiffs objected that the request was overbroad, sought irrelevant information and called for information protected by the attorney-client privilege. Id. at 9. Defendants argue the requests are relevant to determining the allocation of resources by GNOFHAC before and after the alleged activity by the Defendants. Id. at 8. They point out that GNOFHAC alleges it diverted "significant resources and time" as a result of the alleged activities of the Defendants. Id.

      Plaintiffs respond that the request is overbroad because it seems to cover many different types of meetings including staff meetings, team meetings and board meetings. Pls.' Memo. in Opp., ECF No. 28, at 14. They note that only the board of directors keeps meeting minutes and they submit that the minutes of the meetings do not reflect the operation of the organization. Id. Plaintiffs argue that they have provided other evidence of the diversion of its resources. Id.

      At oral argument, Defendants clarified that they are looking for any meeting minutes that would reflect a diversion of resources by GNOFHAC to the present matter. The Plaintiffs reiterated that the only meetings with minutes are board meetings. Plaintiffs also represented to the Court that counsel had reviewed the minutes and believed they did not show a diversion of resources.

The Court finds that an *in camera* review of the GNOFHAC board meeting minutes will assist in the resolution of the matter. Accordingly, and as ordered at oral argument, Plaintiffs shall provide the board meeting minutes of the GNOFHAC to chambers of the undersigned for *in camera* review.

### F.  **Defendants' Motion to Compel Privilege Log Documents**

The first category of privilege log documents challenged by the Defendants is "initial meeting notes." Defs.' Memo. in Support, ECF 26-1, at 10. These include notes taken by Michelle Morgan, the testing coordinator at GNOFHAC and a memorandum prepared by Renee Corrigan, GNOFHAC's education coordinator. Id. Defendants submit these are business records that are not protected by the attorney-client privilege or work product doctrine.

As to the initial meeting notes, the Plaintiffs argue that the work-product doctrine protects them because they were generated by agents of an attorney. Pls.' Memo in Opp., ECF No. 26-1, at 15. They point out that Michelle Morgan, who took the notes, is a GNOFHAC investigator and that her notes were passed on to an attorney. Id. at 16-17. They submit that an investigator's notes are protected by the work-product doctrine. See Horton v. Maersk Line, Ltd., 294 F.R.D. 690, 700 (S.D. Ga. 2013) ("[T]he investigator's notes qualify as work-product privilege."). They cite a Middle District of Louisiana case explaining that "[i]t is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation." Swoboda v. Manders, No. CV 14-19-EWD, 2016 WL 2930962, at *6 (M.D. La. May 19, 2016) (quoting Naquin v. UNOCAL Corp., No. CIV.A. 01-3124, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002)). Plaintiffs also argue that the memorandum of Renee Corrigan was prepared at the direction of counsel in anticipation of litigation. Pls.' Memo in Opp., ECF No. 26-1, at 17.

The Court agrees that the investigator's notes and the memorandum were prepared in anticipation of litigation. GNOFHAC is an organization that assists people in investigating discrimination in housing and filing housing discrimination claims. The Court finds that Mr. Bates' and Mr. Baugh's initial meeting with a GNOFHAC investigator was the moment when litigation was anticipated. Accordingly, the investigatory notes and memorandum prepared for counsel are protected by the work product doctrine. The Defendants have not addressed whether circumstances exist that would justify discovery of the information in spite of the work product protection. The Court notes that the privilege log is thorough in its description of privileged materials. Accordingly, and as ordered at oral argument, as to the investigator's notes and the initial memorandum, Defendants' Motion to Compel is denied.

The second category of privilege log documents challenged by the Defendants are four emails between Mr. Baugh and Michelle Morgan of GNOFHAC. Defs.' Memo. in Support, ECF 26-1, at 10. These emails are between parties and do not include an attorney. Id. Defendants argue that the attorney-client privilege does not apply to the documents and GNOFHAC should be compelled to produce them. Id.

Plaintiffs counter that the emails are privileged because communications between a client and an attorney's agent are entitled to the attorney-client privilege. Pls.' Memo in Opp., ECF No. 26-1, at 18. They argue that Ms. Morgan is a GNOFHAC investigator and an agent of Mr. Baugh's GNOFHAC counsel. Id.

The attorney-client privilege may extend to a client's communications with an investigator who is acting as agent of an attorney. E.g., Sharonda B. v. Herrick, No. 97 C 1225, 1998 WL 341801, at *5 (N.D. Ill. June 11, 1998), opinion adopted in part, No. 97 C 1225, 1998 WL 547306 (N.D. Ill. Aug. 27, 1998) (holding that notes of interviewers employed by the attorneys were

14

protected by the attorney-client privilege); 1 Paul Rice, <u>Attorney-Client Privilege in the United</u> <u>States</u> § 3:3 ("To the extent that the communications would have been protected had they been with the attorney, courts have extended the privilege to the substantive advice and assistance of associates, clerks and paralegals, investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences.") (footnotes omitted). The United States Court of Appeals for the Fifth Circuit has explained that "[i]n appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who . . . had been employed as agents of an attorney." <u>United States v. Pipkins</u>, 528 F.2d 559, 562 (5th Cir. 1976). The party invoking the privilege for a communication with an attorney's agent must establish that the communication was made and maintained in confidence for the purpose of obtaining legal advice. <u>Id.</u>

Communications by agents of an attorney are clearly within the scope of the attorney-client privilege. And, as discussed above, materials prepared by an attorney's investigator in anticipation of litigation are protected by the work product doctrine. The emails at issue here were made after litigation was anticipated between Mr. Baugh and an agent of his counsel at GNOFHAC. They were prepared as records for the anticipated litigation. The Court finds the emails are protected by the attorney-client privilege and the work product doctrine. Accordingly, and as ordered at oral argument, as to the emails, the Defendant's Motion to Compel is denied.

G. **Plaintiffs' Motion to Compel a Response to Interrogatory No. 15 Calling for a Description of Defendant's Defense that GNOFHAC Lacks Standing**

Defendants objected to the following interrogatory on the basis that it calls for a legal conclusion:

**Interrogatory No. 15**
For the Tenth Defense in your Answer, you contend that, "Plaintiff Greater New Orleans Fair Housing Action Center, Inc.'s claims are barred in whole or part

because Plaintiff Greater New Orleans Fair Housing Action Center, Inc. lacks
standing as a matter of law." Describe in detail all the respects in which you believe
this to be true.

Pls.' Memo. in Support of First Mo. to Compel, ECF No. 29-3, at 3. Plaintiffs argue that

this contention interrogatory is appropriate because Plaintiffs are entitled to learn the legal

basis for Defendants' position on standing. Id. at 4-5. For example, they cite an Eastern

District of Pennsylvania case where the court ordered the defendants answer an

interrogatory asking whether the defendant challenged the plaintiff's standing and if so, the

basis for the contention. Am. Civil Liberties Union v. Gonzales, 237 F.R.D. 120, 125–26

(E.D. Pa. 2006). They argue that Defendants cannot object on the basis that the

interrogatory calls for a legal conclusion. E.g., Donahay v. Palm Beach Tours & Transp.,

Inc., 242 F.R.D. 685, 688 (S.D. Fla. 2007) ("A defendant cannot assert numerous

affirmative defenses, and then take the position that any discovery concerning them calls

for a legal conclusion."); Campbell v. Washington, No. C08-0983-JCC, 2009 WL 577599,

at *3 (W.D. Wash. Mar. 5, 2009) ("The Federal Rules expressly direct that '[a]n

interrogatory is not objectionable merely because it asks for an opinion or contention that

relates to fact or the application of law to fact.'") (quoting Fed. R. Civ. Proc. 33(a)(2)).

Defendants respond by arguing the legal basis for their standing defense. Defs.'

Memo. in Opp., ECF No. 36, at 3-5. They point out that unless GNOFHAC can show an

injury-in-fact, it has no standing to pursue this lawsuit. Id. Defendants argue that

GNOFHAC has not demonstrated a sufficient diversion of resources to establish an injury.

Id. They add that GNOFHAC is well aware of the legal basis for Defendants' standing

argument and GNOFHAC has filed its motion to compel to increase its attorney's fees. Id.

at 7.

Plaintiffs are entitled to know the basis for Defendants' affirmative defenses. To the extent this was unclear to the Plaintiffs because Defendants simply responded to the interrogatory with an objection, Defendants' opposition memorandum makes clear the basis for Defendants' challenge to GNOFHAC's standing to bring this lawsuit. While the Court is sympathetic to Defendants' concern that the Plaintiffs are trying to increase their attorney's fees, the Defendants could have removed this opportunity by responding to the Interrogatory in the same way they opposed the motion to compel—by asserting that GNOFHAC has not diverted resources sufficient to amount to an injury-in-fact that would establish standing. Accordingly, and as ordered at oral argument, the Plaintiffs' First Motion to Compel is granted and the Defendants shall supplement their response to Interrogatory No. 15 to provide the basis for their standing defense.

**H. Plaintiffs' Motion to Compel a Response to Interrogatory (No. 16 to Dorian and No. 15 to Ms. Daigle) Calling for a Description of Defendants' Defense that Plaintiffs' Actions or Inactions Contributed to Plaintiffs' Damages**

Plaintiffs posed the following interrogatory to each Dorian and Ms. Daigle:

> For the Twelfth Defense in your Answer, you contend that, "Plaintiffs' actions, conduct, fault and omissions caused and/or contributed to any damages, losses and/or injuries alleged or claimed by Plaintiffs." Describe in detail all the respects in which you believe this to be true.

Pls.' Memo. in Support of Second Mo. to Compel, ECF No. 29-3, at 3. Defendants responded:

> Plaintiffs in this action have alleged that Defendants have caused certain damages to Plaintiffs. However, as of July 5, 2016, Plaintiffs have (1) failed to provide the Defendants with any evidence of the alleged discrimination, (2) failed to indicate any damages resulting from the alleged discrimination, and (3) failed to make demand upon Defendants for any damages resulting from the alleged discrimination.

Id. Plaintiffs contend that the Defendants' response is unresponsive and incomplete. Id. at 4. Plaintiffs add that contributory fault is inapplicable in a civil rights case and is a negligence

concept. Id. at 5. The Court notes that Plaintiffs' complaint raises a claim for negligence. Plaintiffs also reiterate that their contention interrogatory is appropriate to determine the factual basis for the Defendants' affirmative defense of contributory negligence. Id. at 5-6.

Defendants counter that their response provides the basis for their defense that Plaintiffs have caused or contributed to their own damages. Defs.' Memo. in Opp., ECF No. 36, at 6. They clarify that their position is that "GNOFHAC could have contacted the Defendants regarding the alleged activity." Id. They submit that GNOFHAC's alleged expenditure of resources "could have been avoided had GNOFHAC communicated with Plaintiffs prior to this lawsuit." Id. They also argue that GNOFHAC is aware of the basis for Defendants' argument and has simply filed the Motion to Compel in order to increase its attorney's fees. Id. at 7.

Defendants' opposition memorandum makes clear the basis for their affirmative defense that Plaintiffs contributed to or caused their damages. The Interrogatory response is opaque. Accordingly, and as ordered at oral argument, Plaintiffs' Second Motion to Compel is granted and Defendants shall supplement their responses to Interrogatories No. 15 and No. 16.

## Conclusion

For the foregoing reasons, and as ruled in Court,

1. Defendants' Motion to Compel (Rec. Doc. 26), is GRANTED in part. Within ten days of October 19, 2016,

   a. As to calculation of damages, Plaintiffs shall supplement their response to reflect allocation of resources and how the expenditures were diverted from another effort to the present matter.

b.  As to prior lawsuits, Plaintiffs shall provide a list of all previous discrimination lawsuits in which plaintiff Shawn Bates or Hoyt Baugh was a party over the past fifteen years.

c.  As to previous depositions, Plaintiffs shall provide any depositions by Mr. Bates or Mr. Baugh in any discrimination lawsuit in which Mr. Bates or Mr. Baugh was a party over the past fifteen years.

d.  As to prior residences, Plaintiffs shall provide Mr. Baugh's specific street addresses over the past fifteen years.

e.  As to meeting minutes, Plaintiffs shall provide the board meeting minutes of the GNOFHAC to chambers of the undersigned for *in camera* review.

As to the privilege asserted over the investigator's notes, the initial memorandum, and the emails, Defendants' motion is DENIED. Plaintiffs will not be compelled to produce the referenced documents.

2.  The Plaintiffs' First Motion to Compel is GRANTED and the Defendants shall supplement their response to Interrogatory No. 15 to provide the basis for their standing defense within ten days of October 19, 2016.

3.  Plaintiffs' Second Motion to Compel is GRANTED and Defendants shall supplement their responses to Interrogatories No. 15 and No. 16 within ten days of October 19, 2016.

New Orleans, Louisiana, this 24th day of October, 2016.

_____
Janis van Meerveld
United States Magistrate Judge

19